# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| SAMANTHA DOTSON, | \* | No. 23-227V |
| | \* | |
| | \* | |
| Petitioner, | \* | |
| | \* | Special Master Christian J. Moran |
| v. | \* | |
| | \* | Filed: June 4, 2024 |
| SECRETARY OF HEALTH | \* | |
| AND HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>Daisy Mazoff</u> and <u>Jessica Wallace</u>, Siri & Glimstad LLP, for petitioner;
<u>Rachelle Bishop</u>, United States Dep't of Justice, Washington, D.C., for respondent.

## **PUBLISHED DECISION DENYING ATTORNEYS' FEES AND COSTS**[1]

Samantha Dotson alleged that an influenza ("flu") vaccine caused her to suffer autoimmune hepatitis. She did not support her claim with a report from an expert retained for this litigation. She sought dismissal of her case, which was granted. <u>Entitlement Decision</u>, issued Jan. 10, 2024, 2024 WL 379282.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

Ms. Dotson now seeks, as permitted by the Vaccine Act, an award of attorneys' fees and costs.  The Secretary opposes.  Because Ms. Dotson has not established a reasonable basis for the claim presented in her petition, she is not eligible for an award of attorneys' fees and costs.  Thus, her motion for attorneys' fees and costs is DENIED.

## I.      Health and Events in Ms. Dotson's Life[2]

### A.      Before December 15, 2021

Ms. Dotson was born in 1983.  During a visit to an emergency room on June 2, 2019 for chest pain, laboratory studies revealed a slightly elevated alkaline phosphatase ("ALP") of 123 (normal range: 46-116) and an elevated globulin of 3.7 (normal range: 1.3-3.2).  Ms. Dotson's albumin was slightly low (3.2 with a normal range of 3.4-5).  Exhibit 4 at 474.  She was discharged with a diagnosis of atypical chest pain.  Id. at 474-78.

On November 2, 2019, after two days of intermittent episodes of abdominal pain, Ms. Dotson sought treatment at an emergency room.  Her ALP and globulin remained slightly elevated (134 and 3.6, respectively).  Her aspartate transferase ("AST") was also elevated at 70 (normal range: 14-36).

About two years later, Ms. Dotson felt achy, tired, and winded.  She obtained a Covid-19 test, which was negative.  Exhibit 4 at 309-10 (Sep. 19, 2021).

### B.      December 15, 2021 through December 22, 2022

Some evidence shows that Ms. Dotson received a dose of the flu vaccine and a Covid vaccine on December 16, 2021.  Exhibit 10.  As discussed below, other evidence shows a different date of vaccination.

On December 20, 2021, Ms. Dotson sought care from her primary care physician, Stephon Besson.  She complained about nausea, upset stomach, body aches that started that day, a cough, and a runny nose.  Exhibit 2 at 18.  Ms. Dotson recounted that she had received the flu and Covid vaccines the previous Thursday

---

[2] More details can be found in Resp't's Rep, filed Sep. 14, 2023.

(December 16, 2021).  Dr. Besson observed that Ms. Dotson's eyes were tinged with yellow and she was jaundiced.  Her abdomen was soft with minimal diffuse tenderness.  Results from several laboratory tests showed "extremely elevated" liver enzymes.  Id. at 19.  Upon obtaining these results, Dr. Besson ordered a hepatitis profile.  Id. at 20.

Ms. Dotson continued to have nausea and sought care from an emergency room the next day.  She also reported body aches, a headache, and vomiting starting that morning.  Exhibit 4 at 220 (Dec. 21, 2021).  Some lab tests were abnormal.  She was diagnosed with hepatitis, advised to follow up with Dr. Besson before returning to work, and discharged.  Id. at 218, 227.

Other evidence shows that Ms. Dotson received the Covid-19 and flu vaccines on December 22, 2021.  Exhibit 3 at 3.  The location was the Hometown Pharmacy in Cynthiana, Kentucky.

## C.    December 23, 2021 to July 19, 2023

After the December 21, 2021 emergency room visit, Ms. Dotson saw Dr. Besson.  Exhibit 2 at 16 (Dec. 23, 2021).  This record states that Ms. Dotson received the Covid-19 vaccine four days before she became ill.  Ms. Dotson also had started an over-the-counter diet pill.  Her liver enzymes were elevated.  Dr. Besson assessed her as suffering from autoimmune hepatitis.  Id. at 16-17.  Dr. Besson prescribed prednisone.  Dr. Besson opined that the causes of her condition were the dietary supplement and/or the Covid-19 vaccine.  Id.  Dr. Besson ordered a workup for autoimmune conditions, which was negative for autoimmune disease. Exhibit 4 at 192-93 (Dec. 27, 2023).

Ms. Dotson went to the emergency room at the University of Kentucky on December 28, 2021.  Exhibit 5 at 100.  She reported abdominal pain and passing bright red blood through her rectum.  Id.  (The medical term for blood in a stool is hematochezia.  Dorland's Illustrated Medical Dictionary 822 (33rd ed. 2020).  The history also reflects that Ms. Dotson received the Covid-19 and flu vaccines on December 16, 2021.  Id. at 9-10.  She was admitted to the hospital.

In the hospital, various tests were run.  A liver biopsy showed results consistent with autoimmune hepatitis.  Exhibit 5 at 157.  A pathologist, Eun Lee, stated that "the possibility of drug induced liver disease or drug-induced

3

autoimmune hepatitis cannot be totally ruled out since her initial ALT/AST levels [were] unusually high for autoimmune hepatitis." Id. at 157.  Dr. Lee also suggested that Ms. Dotson's use of a new diet pill could be correlated. Id.

Ms. Dotson was discharged from the hospital on January 1, 2022.  Her diagnosis at discharge was autoimmune hepatitis.  Exhibit 5 at 104.  She was expected to follow up with her primary care physician as well as a gastroenterologist who saw her at the hospital, Dr. Alla Grigorian.

Ms. Dotson saw both Dr. Besson and Dr. Grigorian in January 2022.  Exhibit 2 at 9-14; Exhibit 6 at 33.  The doctors treated her autoimmune hepatitis.

On March 2, 2022, Ms. Dotson returned to Dr. Grigorian.  Exhibit 6 at 17-19.  Ms. Dotson reported she was feeling "good" and had returned to work.  She was taking 10 mg daily of prednisone.  Her liver function tests were normal.  Id. at 10-15.  She was advised to continue the prednisone and to take another medication, Imuran (azathioprine).

A follow-up appointment with Dr. Besson occurred on April 6, 2022.  Exhibit 2 at 7.  Ms. Dotson was concerned about gaining weight while taking prednisone.  Dr. Besson wrote that she had had an "overall nice improvement." Id.

Ms. Dotson had an appointment with Dr. Grigorian on June 8, 2022, and was reported to be "improving" since her last visit.  Exhibit 6 at 4.  Dr. Grigorian noted that Ms. Dotson had an "overall down-trend" in her liver function tests "with [a] decrease in bilirubin," and that her tests were "almost normal" as of March 2022. Id. at 5.  She also wrote that Ms. Dotson's condition was "acute hepatitis, likely AIH vs drug induced AIH." Id.  Ms. Dotson's labs that day "showed normal transaminases, normal bilirubin, [and] normal IgG." Id. at 6.  Dr. Grigorian had Ms. Dotson continue Imuran but stop prednisone. Id.

A liver function test and a complete blood count test conducted on July 15, 2022 yielded normal results.  Exhibit 9 at 35-36.  Results were again normal on August 25, 2022. Id. at 32-33.

During a November 2, 2022 appointment, Ms. Dotson was again "improving." Exhibit 9 at 29.  Dr. Grigorian noted "bilirubin normal, normal transaminases." Id. at 30.  Ms. Dotson was to continue Imuran. Id. at 31.

4

On July 19, 2023, Dr. Grigorian again noted that Ms. Dotson's liver function tests had been normal since October 2022.  Exhibit 9 at 13.  The findings of a liver biopsy were "consistent with a chronic hepatitis, grade 1, stage 0."  Id. at 14.  This is the most recent record Ms. Dotson filed.

## II.    Procedural History

The law firm's timesheets show that an employee of the law firm communicated with Ms. Dotson on January 29, 2022.  However, efforts to start collecting medical records did not really begin until June 2022.

Once the law firm began to receive documents, attorneys and staff investigated various issues.  For example, the date of vaccination was explored.  See entries for 9/09/2022, 9/21/2022, 9/27/2022, 9/28/2022, 9/29/2022, 9/30/2022, 10/06/2022 (multiple entries).  Nothing in the timesheets indicate that the attorneys reached a bottom-line conclusion.

The attorneys and staff also explored whether the flu vaccine and/or the Covid vaccine could have caused autoimmune hepatitis.  Some of this work entailed assessing whether a drug could cause autoimmune hepatitis.  See entries for 9/14/2022, 11/28/2022.  Some entries refer to consulting experts.  See, e.g., entries for 9/29/2022, 10/6/2022, 11/28/2022, 11/29/2022 (multiple entries),

After approximately six months of collecting information and investigating, attorney Daisy Mazoff filed the petition on February 15, 2023.  The petition alleged that Ms. Dotson received the flu vaccine and Covid vaccine on December 16, 2021.  Pet. ¶ 3.  The petition further claimed that the flu vaccine caused Ms. Dotson's autoimmune hepatitis.  Pet. ¶ 41.

Ms. Dotson submitted a set of exhibits and other material approximately one month later.  The case completed its Pre-Assignment Review and was assigned to the undersigned on June 16, 2023.  Ms. Dotson responded to an order identifying treating doctors who linked the flu vaccine to her autoimmune hepatitis.  Pet'r's Status Rep., filed July 13, 2023.  As discussed below, the treating doctors whom Ms. Dotson identified tended to point to factors other than the flu vaccine as causing her autoimmune hepatitis.

The law firm time sheets memorialize efforts to obtain a report from an expert retained for this litigation.  See Entries 7/3/2023, 7/18/2023.

5

The Secretary recommended against an award of compensation.  Resp't's Rep., filed Sep. 14, 2023.  The Secretary reviewed the medical records and stated that the vaccination record reflects a vaccination date of December 22, 2021, although the petition alleges a date of vaccination of December 16, 2021.  Id. at 4 n.2.  The Secretary observed that Ms. Dotson had not submitted a report from an expert.  Id. at 12.  The Secretary commented that Ms. Dotson's treating doctors identified factors other than the flu vaccine as the cause of Ms. Dotson's autoimmune hepatitis, such as the Covid-19 vaccine and her diet pills.  Id.  The Secretary also maintained that Ms. Dotson began to manifest symptoms of autoimmune hepatitis before the date of vaccination, which, according to the Secretary's review of the vaccination record, was December 22, 2021.

Ms. Dotson's attorneys and staff attempted to address some of the Secretary's objections.  For example, they resumed investigating the date of vaccination.  See entries dated 9/14/2023, 9/18/2023, 9/20/2023, 10/15/2023, 10/19/2023, 11/08/2023.  They similarly also attempted to secure a report from an expert.  See entries dated 9/14/2023, 9/18/2023, 9/20/2023.

On November 9, 2023, Ms. Dotson filed a document from the Kentucky Immunization Registry, showing she received the flu and Covid-19 vaccinations on December 16, 2021.  Exhibit 10.  Ms. Dotson has not explained the conflict between Kentucky's document and the pharmacy's record, which places the vaccination on December 21, 2021.  See Exhibit 3.

Pursuant to a June 16, 2023 comprehensive Scheduling Order, Ms. Dotson was obligated to support her claim by filing a report from an expert by January 16, 2024.  Rather than submit this expert report, Ms. Dotson filed a motion to dismiss her claim on December 21, 2023.  Ms. Dotson's motion was granted, and her case was dismissed.  Entitlement Decision.

Ms. Dotson sought an award of her attorneys' fees and costs.  Pet'r's Mot., filed Jan. 19, 2024.  She argued that she acted in good faith and that a reasonable basis supported the claim set forth in her petition.  Id. at 10-17.  She also contended that the amount she sought in compensation was reasonable.  Id. at 17-23.

The Secretary opposed any award of attorneys' fees and costs.  Resp't's Opp'n, filed Feb. 21, 2014.  Although the Secretary did not interpose any objection

6

regarding Ms. Dotson's good faith, the Secretary challenged the reasonable basis. Id. at 7-12.  The Secretary raised six points:

> First, petitioner filed her Petition without proof of vaccine administration on the date alleged;

> Second, the Petition was further facially implausible as petitioner failed to allege facts that would satisfy the Act's severity requirement;

> Third, petitioner submitted no evidence of general causation, that is, a medical theory causally connecting the flu vaccine to AIH.

> Fourth, petitioner's case is void of specific causation evidence;

> Fifth, the record evidence subverts rather than supports the temporal proximity of petitioner's flu vaccination and development of AIH;

> Sixth, Vaccine Program case law does not support petitioner's claim.

Resp't's Opp'n at 7-12.  Although the Vaccine Rules allow a moving party to file a reply, Ms. Dotson did not.  Thus, her motion is ready for adjudication.

## III.    Standards for Adjudication

Petitioners who have not been awarded compensation (like Ms. Dotson here) are eligible for an award of attorneys' fees and costs when "the petition was brought in good faith and there was a reasonable basis for the claim."  42 U.S.C. § 300aa-15(e)(1).  As the Federal Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs.  Simmons v. Sec'y of Health & Hum. Servs., 875 F.3d 632, 635 (Fed. Cir. 2017).  Here, the Secretary has not raised a challenge to Ms. Dotson's good faith.  Thus, the disputed issue is reasonable basis.

In Cottingham v. Sec'y of Health & Hum. Servs., the Federal Circuit stated that the evidentiary burden for meeting the reasonable basis standard "is lower than the preponderant evidence standard."  971 F.3d 1337, 1346 (Fed. Cir. 2020).[3]

---

[3] Some opinions refer to the Federal Circuit's opinion as "Cottingham VII."

Something "more than a mere scintilla" might establish the reasonable basis standard.  Id. at 1356.  Petitioners meet their evidentiary burden with "objective evidence."  Id. at 1344.  In categorizing medical records as objective evidence, the Federal Circuit stated, "[m]edical records can support causation even where the records provide only circumstantial evidence of causation."  Id. at 1346.  Finally, the Federal Circuit in Cottingham specified that "we make no determination on the weight of the objective evidence in the record or whether that evidence establishes reasonable basis, for these are factual findings for the Special Master and not this court."  Id. at 1347.

In its most recent precedential opinion regarding the reasonable basis standard, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence that could support reasonable basis.  James-Cornelius v. Sec'y of Health & Hum. Servs., 984 F.3d 1374, 1379-81 (Fed. Cir. 2021).  The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts."  Id. at 1379 (citing Cottingham, 971 F.3d at 1346).  These two most recent decisions guide the analysis regarding what types of evidence constitute objective evidence of reasonable basis, as originally articulated in Simmons, though the ultimate weighing of such evidence is left up to the special master.

Another valuable case is Cottingham v. Sec'y of Health & Hum. Servs., 159 Fed. Cl. 328 (2022), aff'd without op., 2023 WL 7545047 (Fed. Cir. 2023).[4]  In the context of denying a motion for review of decision that had found no reasonable basis, the Court of Federal Claims stated "the Althen prongs may provide at least some definitional context to causation in a reasonable basis analysis."  Id. at 334-35.  As an opinion from the Court of Federal Claims that did not remand the matter, this opinion does not constitute binding precedent.  Boatmon v. Sec'y of Health & Hum. Servs., 941 F.3d 1351, 1358 (Fed. Cir. 2019).  Likewise, the Federal Circuit's affirmance without an opinion does not create a binding

---

[4] This opinion is "Cottingham XI."

precedent.  Fed. Cir. R. 36.  Nonetheless, <u>Cottingham XI</u> is persuasive by virtue of its reasoning.

Accordingly, the assessment of reasonable basis will follow the Federal Circuit's instructions in <u>Cottingham VII</u>, the Federal Circuit's instructions in <u>James-Cornelius</u>, and the Court of Federal Claims's assessment in <u>Cottingham XI</u>.[5]

## IV.   <u>Analysis</u>

Ms. Dotson recognizes that to establish a reasonable basis for the claim set forth in her petition, she must present some evidence regarding the elements outlined in <u>Cottingham</u>.  Pet'r's Mot. at 13.  There, the Federal Circuit summarized the elements of a successful claim in the Vaccine Program:

> (1) received a vaccine listed on the Vaccine Injury Table;

> (2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;

> (3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table ( 42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

> (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

> (5) has not previously collected an award or settlement of a civil action for damages for the same injury.

---

[5] In setting out standards for evaluating reasonable basis, Ms. Dotson frequently cited cases that either the Court of Federal Claims or special masters had decided before the Federal Circuit began to flesh out the meaning of "reasonable basis" in <u>Simmons</u>, <u>Cottingham</u>, and <u>James-Cornelius</u>.  <u>See</u> Pet'r's Mot. at 12-16.

Cottingham, 971 F.3d at 1345-46.

Of this group, the Secretary has raised questions about (1) receiving a vaccine, (3) causation, and (4) severity.

### A.   Vaccination

The Secretary's first challenge about reasonable basis raises the discrepancy in dates of vaccination: one record says December 22, 2021 (Cynthiana Hometown Pharmacy) and another record says December 16, 2021 (Kentucky Immunization Registry).  The Secretary contends Ms. Dotson "did not attempt to explain the date discrepancy between these two certified vaccination records prior to moving for fees and costs, and petitioner never provided an affidavit detailing efforts to obtain the corrected administration record—despite the availability of this record since the inception of this case."  Resp't's Opp'n at 8.

Although the Secretary's contentions about what happened (and what did not happen) are accurate, the argument appears misdirected.  Ms. Dotson's attorneys could have and should have obtained affidavits from percipient witnesses about the accuracy of the vaccination records.  It does little to help Ms. Dotson's case to assert in the fees motion that after the Secretary questioned the date of vaccination, "Petitioner contacted the pharmacy and was advised the December 22, 2021 date was incorrect, and Petitioner did in fact receive the vaccines on December 16, 2021.  The pharmacy directed Petitioner to the State of Kentucky 'official vaccine' record."  Pet'r's Mot. at 15.  The faces of the documents do not suggest either is more reliable than the other.  Compare exhibit 3 with exhibit 10.[6]

Other than noting some poor work of Ms. Dotson's attorneys, the Secretary fails to connect the discrepancy regarding the date of vaccination to the standards for reasonable basis.  The Federal Circuit has emphasized that an attorney's conduct does not affect the analysis of reasonable basis.  Simmons, 875 F.3d at 636.  The "objective" evidence includes a document that indicates that Ms. Dotson received the flu vaccine on December 16, 2021.  Exhibit 10.  This evidence

---

[6] Given that a December 20, 2021 medical record refers to a vaccination being given on the preceding Thursday (which was December 16, 2021), Exhibit 2 at 18, it appears that the December 16, 2021 date is probably accurate.

constitutes more than a scintilla of evidence regarding the fact of vaccination. Consequently, the problems over the vaccination records are not grounds for denying reasonable basis.

### B.    Severity

The Secretary's second point against reasonable basis concerns the severity requirement, which is the fourth item on Cottingham's list.  The Secretary contends that Ms. Dotson "likewise did not initially provide supportive evidence to satisfy severity."  Resp't's Opp'n at 9.  The Secretary concludes this point by stating Ms. Dotson "failed to remedy this glaring, dispositive issue until November 9, 2023, six weeks prior to moving to dismiss her case, and has not explained why available records necessary to establish her claim were not filed with the Petition." Id.

Again, this argument appears misdirected.  During the entitlement stage, Ms. Dotson filed medical records that showed she was being treated for autoimmune hepatitis more than six months after the vaccination.  Exhibit 9.  This evidence constitutes more than a scintilla of evidence regarding severity.  Consequently, the late submission of records is not a ground for denying reasonable basis.

### C.    Causation

The third item in Cottingham's list is that petitioner must present some evidence that the vaccine caused (or aggravated) a condition.  As mentioned, special masters can borrow the structure from Althen in assessing this aspect, although the burden of proof is different.  Cottingham XI, 159 Fed. Cl. at 334-35. Here, the Secretary's third, fourth, fifth, and sixth points regarding reasonable basis challenge different Althen prongs.

#### 1.    *Althen* prong one: medical theory

Pursuant to Althen, a petitioner must present a medical theory causally connecting a vaccine to an injury.  This element has been likened to a showing that the vaccine "can cause" an injury.  Pafford v. Sec'y of Health & Hum. Servs., 451 F.3d 1352, 1355-56 (Fed. Cir. 2006).  It bears repeating that although this element comes from a Federal Circuit opinion set in the context of entitlement, the burden of proof for reasonable basis is lower.

11

Ms. Dotson argues that she satisfied the reasonable basis standard because she filed "medical records," she "attempt[ed] to secure an expert," and the presence of one positive case.  Pet'r's Mot. at 12-13.  These types of information are discussed below.

Ms. Dotson compares her case to Austin, Next friend of D.F. v. Sec'y of Health & Hum. Servs., No. 20-50V, 2021 WL 5080044 (Fed. Cl. Spec. Mstr. Oct. 6, 2021).  In Austin, although the petitioner never filed an expert report, reasonable basis was found based on the medical records filed.  Id. at *2-3.  Ms. Dotson states that Austin demonstrates that "petitioners generally satisfy a reasonable basis inquiry if medical records are filed."  Pet'r's Mot. at 14.

The submission of medical records does not automatically confer reasonable basis by itself.  See Cottingham v. Sec'y of Health & Hum. Servs., No. 15-1291V, 2021 WL 6881248, at *34-37 (Fed. Cl. Spec. Mstr. Sept. 27, 2021) (analyzing medical records and finding no reasonable basis), mot. for rev. denied, 159 Fed. Cl. at 336, aff'd without op., 2023 WL 7545047 (Fed. Cir. Nov. 14, 2023).  Medical records are evidence that might establish some elements of petitioners' claim, such as the receipt of vaccination and the severity of an illness.  For the element of causation, medical records may (but may not) constitute a scintilla of evidence.  The value of medical records depends upon the content of the medical records, including what the medical records say.  The content of Ms. Dotson's medical records is further discussed as part of Althen's second prong.

The remaining items potentially relevant to whether a scintilla of evidence supports Ms. Dotson's claim that the flu vaccine can cause autoimmune hepatitis are her pursuit of an expert and one ruling from a special master.  An attempt to find an expert does not constitute a form of "objective" evidence sufficient to confer reasonable basis.

Here, Ms. Dotson has not presented any evidence from an expert who might have written a supportive opinion.  At best, Ms. Dotson's attorneys discussed the case with potential experts before the petition was filed, after the petition was filed, and after the Rule 4 report was filed.  See, e.g., Timesheets entries for 9/29/2022, 10/6/2022, 11/28/2022, 11/29/2022, 9/14/2023, 9/18/2023, 9/20/2023.  There is no evidence that the experts expressed any interest in writing a report.  Thus, Ms. Dotson's case contains less expert evidence than Sheller in which the petitioners

supplied an email from a potential expert.  See Sheller v. Sec'y of Health & Hum. Servs., No. 18-696V, 2022 WL 4075946, at *406 (Fed. Cl. Spec. Mstr. Aug. 15, 2022), mot. for rev. denied, 164 Fed. Cl. 398 (2023), appeal docketed, No. 2023-1746 (Fed. Cir. April 12, 2022).  If petitioners and their attorneys could satisfy reasonable basis by simply asking an expert to write a report, the reasonable basis test would be effectively meaningless.

In addition to her pursuit of an expert, Ms. Dotson relies upon a finding that the flu vaccine can cause autoimmune hepatitis.  Pet'r's Mot. at 13, citing Agnew v. Sec'y of Health & Hum. Servs., No. 12-551V, 2016 WL 1612853 (Fed. Cl. Spec. Mstr. Mar. 30, 2016).  The Secretary argued against the value of Agnew:

> Agnew is thus markedly dissimilar and cannot support reasonable basis here: it involved a different vaccine, different alleged diagnosis, unquestioned timeline of an injury following vaccination, and no apparent alternative causes, among other differences. Moreover, Agnew stands in opposition to numerous unsuccessful AIH cases, which the Special Master previously encouraged petitioner's counsel to review.

Resp't's Opp'n at 12.  The cases to which the Secretary referred include (1) Porter v. Sec'y of Health & Hum. Servs., No. 99-639V, 2008 WL 4483740 (Fed. Cl. Spec. Mstr. Oct. 2, 2008); (2) Rotoli v. Sec'y of Health & Hum. Servs., 89 Fed. Cl. 71 (2009); (3) Porter v. Sec'y of Health & Hum. Servs., 663 F.3d 1242 (Fed. Cir. 2011); and (4) Williams v. Sec'y of Health & Hum. Servs., No. 17-255V, 2023 WL 4401095, at *1 (Fed. Cl. Spec. Mstr. June 12, 2023).

Although not a form of traditional "evidence," prior adjudications can be considered as a factor in determining whether there is a reasonable basis for evaluating Althen prong one.  Sheller, 2022 WL 4075946, at *407.  However, the value of the earlier adjudication depends upon numerous factors.  The Secretary distinguished Agnew; a reply from Ms. Dotson might have explained why she contends that Agnew helps her argument for reasonable basis.

13

2.      *Althen* prong three: temporal association

The third Althen prong requires persuasive evidence that the interval between the vaccination and the onset of the condition for which compensation is sought appropriate for inferring causation.  Althen, 418 F.3d at 1278.  This element is a factor in assessing reasonable basis, but at a lower level of proof.

The Secretary's fifth criticism is that "the record evidence subverts rather than supports the temporal proximity of petitioner's flu vaccination and development of AIH."  Resp't's Opp'n at 11.  The Secretary correctly contends that simply showing that the vaccination preceded the diagnosis does not confer reasonable basis automatically.  Chuisano v. United States, 116 Fed. Cl. 276, 287 (2014) ("Temporal proximity is necessary, but not sufficient").

Another problem is that Ms. Dotson is equating her *diagnosis* of autoimmune hepatitis with the *onset* of her autoimmune hepatitis.  When a person begins to suffer from autoimmune hepatitis can be difficult to determine because "the condition can be present for years before a progressive injury leads to visible symptoms and clinical evaluation."  Williams v. Sec'y of Health & Hum. Servs., No. 17-255V, 2023 WL 4401095, at *12 (Fed. Cl. Spec. Mstr. June 12, 2023) (internal quotations and citations omitted).

Based upon this awareness of autoimmune hepatitis as "a chronic inflammatory disease that may gradually develop with silent symptoms," the Secretary argued that the onset of Ms. Dotson's autoimmune hepatitis "is in contention."  Resp't's Opp'n at 11.  To support a suggestion that Ms. Dotson's autoimmune hepatitis may have begun before she was vaccinated, the Secretary points to "certain elevated labs that well-preceded December 16, 2021."  Id.  To be clear, the Secretary has not presented an opinion from an expert about when Ms. Dotson's autoimmune hepatitis began.  But, the same can also be said for Ms. Dotson---she, too, has not submitted an opinion from an expert regarding the onset of the autoimmune hepatitis.  Because Ms. Dotson bears the burden to establish the reasonable basis for her claim that the flu vaccine caused her to suffer autoimmune hepatitis, the relative lack of evidence on this point weakens Ms. Dotson's argument that reasonable basis supported her claim.

14

3.      *Althen* prong two: logical sequence

The second Althen prong requires preponderant evidence that there is a logical sequence of cause and effect.  Althen, 418 F.3d at 1278.  It has been likened to asking whether the vaccine "did cause" the injury.  Pafford, 451 F.3d at 1355.  Again, although this element is a factor in considering reasonable basis, the burden of proof is lower than preponderant evidence.  In the context of the second Althen prong, the views of treating doctors should be considered.  Capizzano v. Sec'y of Health & Hum. Servs., 440 F.3d 1317, 1326 (Fed. Cir. 2006).

The Secretary's fourth point against reasonable basis is that Ms. Dotson's "case is void of specific causation evidence."  Resp't's Opp'n at 10.  The Secretary identified four doctors who pointed to factors, such as the Covid-19 vaccination, the new diet supplement, and drugs, as potential causes of Ms. Dotson's autoimmune hepatitis.  When called upon to identify treaters who linked the flu vaccination to Ms. Dotson's autoimmune hepatitis, Ms. Dotson did not identify any treating doctors who singled out the flu vaccine.  Pet'r's Status Rep., filed July 13, 2023.  At best, the flu vaccine was mentioned with other potential causes, including the Covid-19 vaccine and the new diet pills.

4.      Assessment

Even at a level of proof below the preponderant evidence standard, Ms. Dotson has failed to carry her burden to show that a reasonable basis supported her claim that the flu vaccine caused her to suffer autoimmune hepatitis.  Ms. Dotson's strongest point is that one special master found that a vaccine induced a different disease that injured a person's liver.  But this slender reed cannot carry Ms. Dotson's burden by itself.  Ms. Dotson's treating doctors tended to point to factors other than the vaccination as potential causes for the autoimmune hepatitis.  Ms. Dotson did not present an expert supporting her claim.  She did not reply to the Secretary's argument that her autoimmune hepatitis might have actually started before the vaccination.

The finding that Ms. Dotson's case lacked a reasonable basis is based upon all the evidence, including the medical records that show she was being treated for autoimmune hepatitis for more than six months after the vaccination and that show she received the flu and Covid-19 vaccinations on December 16, 2021.  Because all the evidence does not amount to a quantum and quality of evidence sufficient to

15

cross the threshold for reasonable basis, it therefore follows that the evidence submitted in conjunction with the petition was also insufficient.

Due to an insufficiency of evidence, Ms. Dotson has not established that she is eligible for an award of attorneys' fees and costs. (Again, Ms. Dotson's burden on this point is lower than the preponderance of the evidence standard.) Without this predicate showing, Ms. Dotson cannot be awarded any attorneys' fees and costs. A determination that a petitioner, like Ms. Dotson, is not eligible for any attorneys' fees and costs comports with the Vaccine Act and Congress's expectation that "Fee denials are expected to occur." Chuisano, 116 Fed. Cl. at 286 (denying motion for review of a decision that denied all attorneys' fees).

## V.    Conclusion

Ms. Dotson has not established a reasonable basis to support the petition's claim that the flu vaccine caused her to suffer autoimmune hepatitis. Without a showing of reasonable basis, she cannot be awarded her attorneys' fees and costs. Thus, her motion for attorneys' fees and costs is DENIED.

The Clerk's Office is instructed to enter judgment in accord with this decision unless a motion for review is filed.[7]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[7] Information regarding the content and deadline for a motion for review is available in the Vaccine Rules posted to the Court's website.